John F. Scileppi, J.
The defendant has been indicted for the crime of violating section 1141 of the Penal Law in that he: “ wilfully did sell, lend, give away, distribute, show and transmute and offer to sell, lend, give away, distribute, show and transmute and possess with intent to sell, lend, distribute, give away., show and .transmute and did advertise and did otherwise offer for loan, gift, sale or distribution a quantity of a certain obscene,, lewd, lascivious, filthy, indecent and disgusting magazine, to wit, a magazine entitled ‘ 1958 Annual Sunshine and Health ’ etc.”
Defendant moves for an inspection of the Grand Jury minutes, or in the alternative, to dismiss the indictment. He also moves for a dismissal of the indictment herein on several additional grounds, each of which will be treated separately herein. This motion originally asked for leave to withdraw his plea of not guilty but, upon the return day of the motion, defendant withdrew this part of the motion.
A brief review of the proceedings already had herein will help place the issues in clearer focus.
The defendant was arrested on July 9, 1958 and charged with violation of section 1141 of the Penal Law in that he possessed with intent to sell an indecent, obscene and lascivious magazine. On August 8, 1958 a full preliminary hearing was held in the Felony Court and the defendant, who was represented by counsel, was held for the Court of Special Sessions. On August 12, 1958 the District Attorney filed an information in the Court of Special Sessions charging the defendant with violation of said section 1141 of the Penal Law. On October 8, 1958 defendant moved for his discharge and for a dismissal of the information upon grounds that the publication involved was not obscene *724 as a matter of law and. is protected by the State and Federal constitutional provisions guaranteeing freedom of press and speech. That motion was denied by the Court of Special Sessions on January 19, 1959. On October 15, 1959 defendant obtained a certificate pursuant to section 31 of the New York City Criminal Courts Act and an order was made by the Supreme Court directing that the defendant be prosecuted by indictment. The defendant’s application for said certificate was not opposed by the District Attorney. The. Grand Jury then found this indictment on December 16, 1959, and this motion followed on February 3, 1960.
One of defendant’s contentions is that, because the indictment herein charges him with more and additional criminal activities than the charges originally brought against him by information in the Court of Special Sessions, the indictment is insufficient and should be dismissed. The court cannot agree with this contention. When defendant applied for a jury trial pursuant to section 31 of the New York City Criminal Courts Act, he subjected himself to whatever charges the Grand Jury found that the proof before it established. The order removing the action from the Court of Special Sessions did not limit the indictment to the specific charge that had been made there and transferred to this court. (People v. Ryback, 3 N Y 2d 467 [1957].)
The defendant further contends that the indictment herein is insufficient in law because it was signed by the assistant foreman of the Grand Jury rather than by the foreman. This contention is likewise without merit. The assistant foreman, under his appointment by the court, is vested with the same powers and authority which the foreman receives when the Grand Jury is sworn 'by the court, and the assistant foreman in the absence of the foreman, may act in place of the foreman and may sign the indictment after it is found by the Grand Jury. (Code Grim. Pro., § 268.)
Defendant further argues that the District Attorney must first proceed under section 22-a of the New York Code of Criminal Procedure before he may prosecute under section 1141 of the Penal Law. This is also without merit. The District Attorney has sole discretion in proceeding under either section 22-a of the Code of Criminal Procedure or under section 1141 of the Penal Luav. The injunctive relief Avhich may be applied for in the Supreme Court under section 22-a only provides an additional sanction of a civil nature-, against dissemination of obscene matter, and compliance thereAvith is not a condition precedent to the commencement of a prosecution under section *725 1141 of the Penal Law. As stated in Brown v. Kingsley Books, 1 N Y 2d 177, 182: ‘1 Thus, by virtue of section 1141, it has long been a misdemeanor in this state, punishable by imprisonment or fine or both, to sell or distribute any written or printed obscene material of the kind described in section 22-a of the Code, and similar statutes are in effect in almost all of the other jurisdictions in this country (see Note, 22 IT. of Chicago L. Rev. 216). The legislature, however, apparently concluded that such penal sanctions were inadequate to stem the rising tide of obscene and pornographic publications that have, in recent years, flooded the book and periodical market, and the supplemental remedy of an equity action for an injunction was thereupon devised. (Cf. Report of New York State Joint Legislative Committee to Study the Publication of Comics, N. Y. Legis. Doc., 1954, No. 37, pp. 31-32.) Whether or no.t the legislature acted wisely is, of course, no concern of the courts. Our inquiry is limited to whether its act transcends constitutional limits.”
The Court of Appeals, by this decision, apparently took cognizance that section 1141 of the Penal Law is recognized as a proper procedure when it said at page 186: “ There can be little doubt that the rigid enforcement of such penal provisions, though operating by indirection, may serve as effectually as direct action by injunction, if not more so, to deter publication of an obscene worh.,> (Italics supplied.)
Defendant .also urges that section 1141 of the Penal Law and this prosecution instituted thereunder violates the Fourteenth Amendment of the United States Constitution when applied to periodical publications such as the magazine in question.
In effect, defendant contends that this prosecution has been used by the District Attorney to effectuate prior restraint in violation of the said constitutional amendment because of the fact that defendant has agreed not to distribute the magazine pending the disposition of this case. This contention is obviously unsound.
The fact that the District Attorney in his sound judgment is prosecuting defendant under section 1141 of the Penal Law does not constitute a violation of defendant’s constitutional safeguards. Moreover, the same question was raised in the United States District Court of the Southern District of New York in the case instituted by Sunshine Publishing Co., Commercial Distributors, Inc., and Margaret A. B. Pulis against the District Attorney of Queens County, the Police Commissioner of the City of New York and others and which is still pending. *726 In that action, the plaintiffs sought to enjoin and restrain those officers from prosecuting the defendant herein, and still seek to recover damages against them. All of the plaintiffs there are represented by the same counsel who represents the defendant in this case. The injunction was of course denied. The court there denied the plaintiff’s application for the appointment of a three-judge court to determine the constitutionality of that section, thus holding that section 1141 of the Penal Law was not unconstitutional.
Section 1141 of the Penal Law therefore does not on its face, nor as construed and applied herein, violate the Fourteenth Amendment of the United States Constitution; nor does it operate as a prior, current and continuing restraint in violation of said constitutional amendment. (Doubleday & Co. v. New York, 297 N. Y. 687, affd. 335 U. S. 848.)
Defendant further argues that the publication involved is not obscene because the publication passed freely through the mails (as allegedly established by a photostatic copy of the affidavits of Burton Boone and Robert Shepard). Defendant contends that this is a concession by the Post Office Department that the publication is not obscene (as allegedly established by a photostatic copy of a letter to counsel for the defendant from another attorney). Defendant also asserts that the District Attorney of New York County has allegedly conceded that the publication involved is not obscene and indecent by legal standards.
The court is not impressed by these arguments. In the first place, the evidence submitted to establish those assertions is not conclusive and secondly, even if these assertions were true, the opinions expressed by government agencies and private counsel on the issue of obscenity are not binding on this court who is charged with the responsibility of making its own independent judicial determination from all the facts before it.
Defendant’s contention that the magazine involved herein is not obscene as a matter of law and cannot constitutionally be deemed obscene is not supported by the facts and the law. In support of this contention the defendant cites the case of Sunshine Book Co. v. Summerfield (355 U. S. 372), in which the Supreme Court of the United States at the October, 1957 Term, granted the petitioner’s writ of certiorari and reversed the court below which had held that the February, 1955 issue of “ Sunshine and Health ” was obscene. Defendant asserts that the decision in the Summerfield case (supra) sustaining the February, 1955 issue of “ Sunshine and Health ” is res judicata, is binding on this court and applies with equal force to the *727 1 ‘ 1958 Annual Sunshine and Health ’ The two issues must he regarded as separate publications each to he judged on its own specific contents. The decision in the Summerfield case cannot give the publication in question immunity for all time, a sort of carte blanche for all future issues.
Moreover, the proof in the instant case is much stronger than the proof in the case relied upon by the defendant. This court has carefully examined the contents of the February, 1955 issue of 1 ‘ Sunshine and Health ’ ’ which was considered by the Supreme Court in the Summerfield case (supra) and has compared it with ‘ ‘ 1958 Annual Sunshine and Health ’ ’ which is involved in this ease. There are a number of material differences with respect to the contents of each magazine.
The pictures and other material in both magazines are not the same in contents, description and effect. The February, 1955 issue, which was before the Supreme Court in the Summerfield case, consists of only 32 pages including the covers, and contains 17 pictures of nude persons, while the one before this court consists of 64 pages in addition to the covers, and contains 85 such pictures. In the 1955 issue there were no color pictures; whereas in the 1958 issue there are 10 full-page pictures of nude persons in color. In addition, a number of pictures in the 1958 annual issue appear to be deliberately posed for the obvious purpose of arousing sexual interest. There are more pictures and more close-ups of stark nudity showing male, female and adolescent genitalia in the 1958 issue, and the pictures in it are much sharper in focus than the pictures in the February, 1955 issue. Moreover, most of the pictures in the issue of the magazine before this court tend to invite particular attention to the sexual organs and pubic hair of the persons depicted; which include men, women and children pictured together and alone, on various pages thereof. The publication in question is permeated with pictures which tend to incite passion and sexual urge and are of such nature and composition that the average person, applying contemporary community standards, could find the dominant theme of the material taken as a whole to appeal to prurient interest.
In the February, 1955 issue which was sustained by the Supreme Court, some attempt was made by distance, shadowing and shading to conceal to a large degree the genital organs and pubic hair of those depicted, but not so in the 1958 issue. This court is not saying that all of the pictures in the publication involved are obscene by legal standards, but most of them could he so considered by the triers of the facts. The contents of the magazine in question is so materially and significantly *728 different in its dominant theme 'and prospectus from the one sustained in the United States Supreme Court in the Summerfield case (supra) that a petit jury would be legally justified in finding a conviction under section 1141 of the Penal Law.
While freedom of .speech and press is one of our most cherished constitutional guarantees which must vigilantly be protected, “ obscenity is not within the area of constitutionally protected speech ”. (Roth v. United States, 354 U. S. 476, 485, 489.) In that case the court further laid down guide lines for judging obscenity and it said that the test is ‘1 whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest ”.
There the court obviously recognized the pernicious evil of obscenity and pornography and guaranteed protection against filthy and obscene publications which debase and imperil the basic moral levels of the average decent respectable person-of the contemporary community. The rule in that case affords protection against assaults on the moral fiber of our youth whose delinquencies unfortunately have already reached alarming proportions. It affords the community the right to protect these unsuspecting youngsters from the influence of obscene magazines which inspire sexual urge and often result in the commission of revolting sex crimes. Justice and common sense therefore dictate that obscenity and pornography must be eliminated from our community to protect the homes and families of. our civilized society. These protections are not censorship under our laws.
The question of obscenity and pornography is not a matter of the emotionalism of people with puritan or prudish attitude of the mind. It is a question of the level of morality as maintained by the standards of the average person in the contemporary community. The test of decency is the fair judgment not of sensualists and faddists, but that of reasonable adults in the community.
After examining and considering the publication involved objectively and .in the most liberal sense, the court cannot escape the conclusion that the material in this publication requires the defendant to stand trial by a petit jury to determine whether, to the average person applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.
After examining the Grand Jury minutes, the court finds that the Grand Jury had sufficient legal evidence before it to warrant the finding of the indictment herein and therefore *729 denies defendant’s motion for inspection of the Grand Jury minutes and to dismiss .the indictment.
This court also finds that the Grand Jury proceedings herein were in all respects regular and in conformity with law.
For the reasons stated, the defendant’s motion to dismiss the indictment on all the grounds urged is in all respects denied. Order entered accordingly.