UNITED STATES of America, Plaintiff,

v.

James S. FREW, Defendant.

UNITED STATES of America, Plaintiff,

v.

Harold STEINER, Defendant.

Crim. Nos. 37550, 37580.

United States District Court
E. D. Michigan, S. D.
Aug. 11, 1960.

Robert E. DeMascio, Asst. U. S. Atty., Detroit, Mich., for U. S.

Goodman, Crockett, Eden & Robb, Detroit, Mich., and Brock, Fleishman & Rykoff, Hollywood, Cal., for defendants.

O'SULLIVAN, Circuit Judge (sitting by designation).

The motion to dismiss and for bill of particulars in each of the above cases is bottomed upon substantially the same reasoning. One opinion will suffice to express the Court's views, and a separate order may be entered in each case.

Defendants Frew and Steiner were, in the month of June, 1959, separately indicted by a grand jury sitting in the Eastern District of Michigan, Southern Division. The Frew indictment contained four counts and that of Steiner seven. All counts charged violations of Section 1461, Title 18 U.S.C. All of the counts of the Frew indictment, and counts one through six of the Steiner indictment, charged that the named defendant, "did knowingly cause to be delivered by mail, according to the direction thereon, a circular advertisement addressed to (the name and address of a person residing within the Eastern District of Michigan, Southern Division, was here furnished); said circular advertisement giving information, directly or indirectly, where, or how, or from whom, or by what means, obscene, lewd, lascivious and indecent pictures, color slides and motion picture films may be obtained; in violation of Section 1461, and 2, Title 18, U.S.C."

Count seven of the Steiner indictment charged that the said Steiner, "did knowingly use the mails and did knowingly cause to be delivered by mail, according to the direction thereon, from Los Angeles, California, to Maybee, Michigan, a certain first class parcel directed to Raymond Grissett, Box 10, Maybee, Michigan, in the Eastern District of Michigan, Southern Division, containing obscene, lewd, lascivious and indecent pictures and motion picture film; in violation of Section 1461, Title 18, U.S.C."

I. *Motions to Dismiss*

The motions to dismiss rely upon three grounds: (a) that the indictments do not state facts sufficient to constitute an offense against the United States, (b) that collateral estoppel bars prosecution of the indictments, and (c) that statute upon which the indictments are bottomed is unconstitutional.

(a) *Do the indictments state facts sufficient to constitute an offense against the United States?* Initially, defendants claim that the indictments do not identify or describe the written circulars alleged to have been delivered by mail. In response to defendants' motions for Bills of Particulars, this Court will require the Government to specifically identify such written circulars. Actually, the Government has already completely identified such circulars by conceding of record that the circulars referred to in the indictments are the same circulars as were involved in the proceedings in the United States District Court in Los Angeles, which are relied upon by defendants for their defense of collateral estoppel. Each count gives the date upon which the defendant is charged with using the mails for the criminal purpose alleged and the name and address of the person to whom the circular advertisement, and in the case of count seven of the Steiner indictment, the alleged obscene material, was delivered.

The offense is charged in the language of the statute. This court is of the opinion that the various counts of the indictment do state facts sufficient to constitute an offense against the United States. Rule 7(c), Federal Rules of Criminal Procedure, 18 U.S.C. Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92; Burnett v. United States, 6 Cir., 1955, 222 F.2d 426, 428; Anderson v. United States, 6 Cir., 1954, 215 F.2d 84, 86; Butzman v. United States, 6 Cir., 1953, 205 F.2d 343, 348.

(b) *Collateral estoppel.* Affidavits supporting the motions to dismiss state that these defendants are, and have been, engaged in the City of Los Angeles in the mail order publishing business. The instant motions do not require this Court at this time to finally pass upon the character of their circular advertisements. Whether as a matter of fact and law these defendants are purveyors and disseminators of pornography will be a question involved in the trial of the cases at bar. They, and their predecessors in this business, adopted the trade names of Camfield House, Gemarco, Saturn Co., House of Armond, Jon Armond, Filmfare Co. and Filmcraft Co. From Los Angeles, the House of Armond, et al., by mail, spread throughout the United States advertisements soliciting the purchase of their wares and merchandise. Embellished with suggestive pictures and language these circulars assure their young recipients[1] that the wares and merchandise will more than fulfill the leering promise of the advertising. The supporting affidavits also disclose that the activities of predecessor entrepreneurs of these defendants had, in cases listed in the affidavits, been attacked by the U. S. Post Office Department in proceedings brought under Section 259a,

Title 39 U.S.C.A. In such administrative proceedings, orders had been entered forbidding the postmaster at Los Angeles from delivering to defendants said predecessors' mail arriving in the post office in Los Angeles containing orders or money for the purchase of the materials advertised in the circulars mentioned. Thereafter the defendants' said predecessors brought suit in the U. S. District Court at Los Angeles to restrain the Los Angeles postmaster from withholding delivery of the aforesaid mail. A permanent injunction was issued in each of said cases restraining enforcement of each of the administrative orders theretofore entered. The original files in such district court cases have been submitted to this Court here for consideration in connection with defendants' claims that the judgments entered therein collaterally estop the Government from prosecuting the indictments involved in the cases at bar. The Los Angeles postmaster did not appeal from some of the judgments so entered and as to others abandoned appeals once started.

On the motions here for decision the United States concedes that the advertising circulars described in the instant indictments are the same as those which were involved in the Los Angeles cases.

The defendants argue, from the foregoing, and from what the records of the Los Angeles cases disclose, that the Government is now estopped from relying upon the mailing of the mentioned circulars as a basis for the present indictments.

Examination of these administrative proceedings and of the opinions and judgments of the district court which restrained their enforcement, discloses that the administrative officer who entered the orders did not ever examine any of the material that was being delivered by defendants' predecessors to fill orders pro-

---

1. Defendants cite (we assume to support their claim that they do not deal in obscene materials) the case of U. S. v. Ross, USDC, So.D. of Cal.Crim. No. 23340, where one whom they identify as a fellow craftsman was acquitted of charges similar to those contained in the indictments here. The evidence in that case showed that the recipients of the kind of material we have been talking about were generally *boys between the ages of 12 and 18.*

cured from mailing of the circulars. The district judge in each case, following the decision in the Ninth Circuit in the case of Olesen v. Stanard, 227 F.2d 785, held that unless and until it was determined that the wares and merchandise shipped pursuant to orders received in response to the advertising circulars were in fact obscene there was not substantial evidence upon which to justify the administrative orders entered. In the case of Olesen v. Stanard, the Ninth Circuit affirmed an order whereby the postmaster of Los Angeles was enjoined from impounding and withholding mail addressed to one Stanard who was engaged in business not unlike that of these defendants. Stanard had deposited in the Los Angeles post office circulars soliciting orders for various materials. The Postmaster General instructed the postmaster at Los Angeles to impound all mail addressed to Stanard pending final administrative decision under Title 39 U.S.C.A. § 259a. An administrative hearing was had and a final order entered whereby the postmaster at Los Angeles was forbidden to pay any postal money orders drawn to the order of Stanard and directed to return all letters and other mail matter arriving at Los Angeles addressed to the said Stanard. The opinion at page 787 stated:

> "At the administrative hearing, appellee's advertising circulars were received in evidence, but none of the wares referred to therein was offered and no evidence was adduced to the effect that any of the advertised wares had been mailed or transported in any manner. And there was no evidence, descriptive or otherwise, that the wares which might be sent to one who ordered them through the circulars, would, in fact, be in violation of the statute."

It does not appear that the circulars in the Stanard case were the same circulars as those in the instant indictments. Stanard was not a business predecessor in privity with defendants in this case.

The Stanard opinion further says:

> "It is agreed by all parties that the circulars themselves did not violate the statute under which the Postmaster General had assumed to act by the ex parte issuance of the impound order and the final order which issued after the administrative hearing." At page 787.

> "It is admitted that the only basis for the Postmaster General's order was the circulars which did not of themselves violate the statute. The circulars at most were no more than invitations to buy merchandise which could reasonably be surmised to be within the reach of the statute." At page 788.

The Court concluded:

> "There being no sufficient basis in fact to support the Deputy Postmaster General's order following the administrative hearing, it is entirely without validity." At page 788.

The names of the plaintiffs in the several Los Angeles District Court cases here relied on as collateral estoppel were Toberoff and Cooper. Affidavit of defendant Steiner avers that he is successor to the business of Toberoff and Frew states he was successor to Cooper. The first of the series of Los Angeles cases here relied upon was George Cooper vs. Olesen, individually and as Postmaster of the City of Los Angeles, Civil No. 457–57 P.H. In the administrative proceeding which was the background to that case, the postal authorities did not introduce in evidence any material distributed pursuant to orders procured from the advertising circulars. In his answer to the complaint in the District Court, the postmaster contended it was not necessary under Section 259a Title 39 U.S.C.A. to charge that the merchandise mailed or the circulars were obscene. The district judge's order granting the injunction stated:

> "This case is clearly within Olesen v. Stanard, 9 Cir., 227 F.2d 785."

In his Findings of Fact and Conclusions of Law, the district judge made

reference to the contention of the postal authorities and found there was not substantial evidence that the circulars involved gave information as to where, how or from whom obscene, lewd, lascivious and indecent pictures or film could be had. Supporting his findings in this regard he gave his interpretation of Olesen v. Stanard as a case "which held that to support a finding that a person is giving information as to where, how and from whom obscene matter may be obtained, the post office department must introduce the merchandise advertised and must make a finding as to its obscene nature."

In contrast with the holding of Olesen v. Stanard is the decision in the case of United States v. Hornick, 3 Cir., 1956, 229 F.2d 120, 122. In affirming a conviction in a criminal prosecution under Section 1461, Title 18, the Third Circuit held that the offense of using the mails to give information where obscene matter may be obtained is committed even though what is sent in response to the advertisement "is as innocent as a * * landscape". If choice was necessary to the decision here, this Court would follow Hornick rather than Stanard.

Seven voluminous files of the Los Angeles cases have been examined by this court. It would unnecessarily prolong this memorandum to attempt a detailed analysis of them. It is sufficient to say that a pattern similar to Cooper v. Olesen, No. 457–57 was followed in all of them, with one exception hereinafter discussed. In each the complaint charged that the postal authorities in the administrative proceedings had not charged that the material shipped pursuant to orders was itself obscene, and that they had not introduced in evidence any of the material thus shipped. The complaints relied on Olesen v. Stanard asserting it to be a holding that in the absence of introduction and examination of the allegedly obscene material promised by the advertising circulars there was not substantial evidence to support the administrative order of the postal authorities. The district judge agreed with Cooper and Toberoff. His Findings

of Fact and Conclusions of Law prepared by counsel for Cooper and Toberoff contain some recitals which, isolated from the total context of the district judge's reasoning in his Memorandum for Judgment and Findings, would apparently aid defendants' contentions here. In disposing of most of the cases as a group the district judge made a Memorandum for Judgment in which he said "each of the above cases are so called circular cases and come squarely within the ruling of Olesen v. Stanard, 9 Cir., 227 F.2d 785." This court concludes that the judgments in the Los Angeles cases were bottomed upon the district judge's conclusion that because the Post Office Department had not introduced in evidence, or examined or passed upon the alleged obscenity of, the material shipped, there was not substantial evidence to support the administrative orders involved.

■ In one case, however, namely, the case of Cooper d/b/a Saturn Co. vs. Garrett, No. 537–57, the proceedings did not follow the pattern of the other cases. In that case, there had been introduced in evidence at the administrative hearing several pieces of material which had been shipped pursuant to the advertising circulars. The trial court there expressed his conclusion that such materials were not obscene, and concluded that the order of the Post Office Department was un• founded and not supported by substantial evidence. A permanent injunction was issued. This court, however, will not assume that the materials there found not to be obscene by the trial judge are the materials, the sale of which is solicited by the advertising circulars involved in the cases at bar.

■ For the foregoing and following reasons, this Court is of the opinion that the mentioned proceedings in Los Angeles do not collaterally estop the prosecution of the indictments here involved. This Court's reasoning is summarized as follows:

(i) The holding of the district court at Los Angeles is limited to a holding that the administrative orders of the Post Office Department were not sup-

ported by substantial evidence because the administrative officers did not examine materials shipped pursuant to the advertising circulars. It is appropriate here to quote the language of the Supreme Court in the case of Commissioner of Internal Revenue v. Sunnen, 1947, 333 U.S. 591, 601–602, 68 S.Ct. 715, 721, 92 L.Ed. 898:

> "But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of stare decisis. *Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment.*"

Referring to the doctrine of collateral estoppel, the Supreme Court in the case of Yates v. United States, 354 U.S. 298, 336, 77 S.Ct. 1064, 1086, 1 L.Ed.2d 1356 said "that doctrine makes conclusive in subsequent proceedings only determinations of fact, and mixed fact and law, that were essential to the decision".

(ii) Much has been written upon the subject of what is obscenity, lewdness, lasciviousness, etc. This Court will not attempt to add his essay to the abundance of such literature. In Roth v. United States, 354 U.S. 476, at page 489, 77 S.Ct. 1304, at page 1311, 1 L.Ed.2d 1498, the Supreme Court announced a test for determining whether a particular matter is obscene: "whether to the aver-

age person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest."

Accordingly, if "contemporary community standards" are determinative, then what is obscene, lewd or just plain filthy is a matter of time and place. To support their claim that Section 1461, Title 18, places an undue burden on them in the conduct of their nationwide business, defendants' briefs urge that they should not be required to anticipate what may be the community standards of each urban or rural community whose youth may succumb to the allure of defendants' merchandise. They insist that what is obscenity is a matter of time and place. If so, what the community of Los Angeles may have found not obscene may meet a different standard in Michigan. Contemporary 1960 may likewise be different than 1957 unless we must assume that the standards of all communities in America are in a state of continuous deterioration. There must however, be some constancy in morality— some things which, without reference to time or place, will offend the decent instincts of any community however prudish or however sophisticated. If, by using the Los Angeles proceedings as an irrevocable license and imprimatur, without limit as to time or place, these defendants can send their merchandise wherever they please, then indeed are they the ones who will set the standard for every community they choose as their market. Unless compelled by law to do so, this Court declines to employ a respected legal doctrine to aid in this so called progress. This Court is satisfied that the law does not require him to do so. The words of Judge Learned Hand in the case of The Evergreens v. Nunan, 2 Cir., 141 F.2d 927, 929, 152 A.L.R. 1187, emphasize that such use of the doctrine of collateral estoppel would bring about consequences never contemplated by the learned courts which developed it as a salutary legal principle.

> "Defeat in one suit might entail results beyond all calculation by

either party; a trivial controversy might bring utter disaster in its train. There is no reason for subjecting the loser to such extravagant hazards; unless the decisions compel us to go so far, we will not do so."

■ (c) *Constitutionality of Statute.* The constitutionality of the statute involved here, (Section 1461, Title 18 U.S. C.) was sustained by the United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. Citation of that authority is sufficient answer to defendants' contention on this question. However, defendants here assert that a 1958 amendment to that section which permits prosecution at the place of delivery as well as at the place of depositing the mail, and for carriage in the mails, makes the holding in Roth v. United States inapplicable. They contend that because, as they claim, under the amendment a publisher would be required to know the community standards of each state through which and into which the mail is sent, an undue burden is cast upon their right of free speech and they are deprived of due process. The first answer to this position is that the case before us is not one involving prosecution in a state through which allegedly obscene material was conveyed by mail. These defendants are not being prosecuted for sending mail through some state, but because they caused to be delivered here in Michigan allegedly offending material. The courts will not consider a challenge to the constitutionality of a statute as it might apply to some hypothetical situation. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Blackmer v. United States, 284 U.S. 421–442, 52 S.Ct. 252, 76 L.Ed. 375; Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571–576, 35 S.Ct. 167, 59 L.Ed. 364.

If a prosecution is one day attempted against publishers such as these defendants in a state through which the mail was transported, it will be time enough to consider whether any constitutional rights of the mailers are offended. United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 74 L.Ed. 508; Yazoo & Mississippi Valley R. R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219, 33 S.Ct. 40, 57 L.Ed. 193.

■■ Defendants also assert that because in their business they transmit their materials throughout the entire United States, it would be placing an undue burden upon them to be required to know in advance the community standards of each locality into which they propose to send their material. One who chooses to carry on an enterprise which might indeed offend criminal statutes enforceable in places in which he proposes to carry on his enterprise, must take the hazards involved. United States v. Wurzbach, supra. It is not the duty of the courts in enforcing the law or of Congress in enacting statutes to advise in advance the likely reaction of juries in each community in which an individual chooses to carry on his activities.

"* * * The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death." Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L. Ed. 1232.

The motions to dismiss the indictments are denied and appropriate orders in conformity with this opinion may be presented for signature in each of the above captioned cases.

## II. *Motions for Bills of Particulars*

■ Defendant Steiner's motion for bill of particulars sets forth some thirty-four items of subject matters upon which he seeks advice from the Government. Defendant Frew's motion contains twenty of such items. The first and most important matter is the identification of the advertising circulars relied upon in all counts of both indictments except Count VII of the Steiner case. Concessions made of record by the Government have probably sufficiently identified such cir-

culars. If not, the Government should make adequate identification thereof by a bill of particulars. Count VII of the Steiner indictment charges the delivery not of advertising circulars but a parcel containing "obscene, lewd, lascivious and indecent pictures and motion pictures." Defendant Steiner should have such materials identified.

■ Both defendants ask that the Government identify and describe the "obscene, lewd, lascivious and indecent pictures, color slides and motion picture films". Information as to where the material could be obtained was allegedly furnished by the advertising circulars mentioned in Counts I–VI in Steiner and I–IV in Frew. The indictments by these counts do not charge the actual delivery of any such material. Defendants know better than the Government what wares and merchandise they had on hand to fill the orders that would be received in response to this advertising. They need no further advice to prepare for their defense.

No purpose would be served by detailed recitation of the remainder of the thirty-four demands in Steiner and the twenty in Frew. The following are examples of their general character:

"7. With respect to the 'pictures, color slides and motion picture films' referred to in each and every aforesaid count of the indictment, state whether the terms 'obscene', 'lewd', 'lascivious' and 'indecent' as alleged in the said counts of the indictment are intended to encompass a single concept, to wit, 'obscenity' as defined by the Supreme Court of the United States in the light of constitutional requirements, or whether each of the said words is intended to encompass different concepts.

"8. If different concepts are intended, state what is embraced and meant by the terms 'obscene', 'lewd', 'lascivious' and 'indecent' as alleged in each of the aforesaid counts of the indictment.

\*  \*  \*  \*  \*  \*

"10. Set forth the geographical limits of the 'community' under whose standards the 'pictures, color slides and motion picture films' are deemed obscene, lewd, lascivious and indecent as alleged in each and every aforesaid count of the indictment.

"11. Set forth the dominant theme of each of the 'pictures, color slides and motion picture films' referred to in each and every aforesaid count of the indictment.

"12. Set forth the manner in which the dominant theme of each of the 'pictures, color slides and motion picture films' referred to in each and every aforesaid count of the indictment, taken as a whole and applying contemporary community standards, appeals to the prurient interest of the average person.

"13. Set forth the standards of the community which were applied in determining that the 'pictures, color slides and motion picture films' are obscene, lewd, lascivious and indecent as alleged in each and every aforesaid count of the indictment.

"14. Set forth the methods, devices and means used and employed in determining the contemporary community standards referred to in '12' and '13' above."

This Court does not think that these questions need be answered by the Government nor do the remaining demands and questions of the motions.

It will accordingly be the order of this Court that

(a) If defendants are not satisfied that adequate identification of the circulars referred to in Counts I–VI of the Steiner indictment and in Counts I–IV of Frew has not already been made by Government concessions they shall give notice of such dissatisfaction to the U.S. Attorney within ten days after the date of order entered pursuant hereto. In such case the Government within thirty days after receipt of such no-

tice shall identify all such circulars and if required exhibit the same or furnish copies thereof to counsel for defendants.

(b) Within thirty days after entry of an order pursuant to this opinion the Government shall identify the materials referred to in Count VII of the Steiner indictment and if requested exhibit the same or furnish copies thereof to counsel for defendants.

(c) Except as above, the defendants' motions for bills of particulars will be denied.

Orders in conformity herewith may be presented for signature.