CINEMA ASSOCIATES, LTD., and Robert Mills, Plaintiffs,

v.

CITY OF OAKWOOD, Defendant.

Civ. No. C-3-75-323.

United States District Court, S. D. Ohio, W. D.

June 22, 1976.

Carmine M. Garofolo, of Griffith & Legler, Dayton, Ohio, for plaintiffs.

Richard W. Ulbrich, pro se.

James R. Gould, of Gould Bailey & Farquhar, Dayton, Ohio, for defendants.

### ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on a stipulation of facts and memoranda filed by counsel. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its findings of fact and conclusions of law.

### I

### FINDINGS OF FACT

1. Plaintiff Cinema Associates, Ltd., is an Ohio corporation engaged in the business of exhibiting motion pictures. Such plaintiff operates a motion picture theatre known as Cinema South within the confines of defendant the City of Oakwood. Robert Mills, plaintiff herein, is an employee of the plaintiff Cinema Associates, Ltd., and is manager of Cinema South. Defendant City of Oakwood is a municipal corporation located within Montgomery County, Ohio and chartered under the laws of the State of Ohio.

2. Among the motion pictures that have been exhibited by plaintiff is one known as "Last Tango In Paris", produced by United Artists Corporation. On December 17, 1975, pursuant to criminal complaint of one Richard Ulbrich and pursuant to a search warrant issued by the Oakwood Municipal Court thereunder, a copy of the motion picture "The Last Tango In Paris" was seized and is presently held as evidence on the aforesaid criminal complaint.

3. A Judicial District known as the Southern District of Ohio has been established by Act of Congress (28 U.S.C. § 115). It consists of 48 counties, all located in the southern portion of the State of Ohio. By such Act of Congress "Seats of Court" have been established at Cincinnati, Ohio, Columbus, Ohio, Dayton, Ohio, and Steubenville, Ohio. Montgomery County, Ohio, is one of the counties included in the Southern District of Ohio.

4. In the case of *United Artists Corporation v. Simon L. Leis,* Civil No. C–1–74–244, The Honorable Timothy S. Hogan, Chief Judge of the United States District Court for the Southern District of Ohio, on July 10, 1974, declared "Last Tango In Paris" not obscene as a matter of law.

### II

### OPINION

The significant issue before this Court turns upon the effect of the decision in *United Artists Corporation v. Simon L. Leis, Jr., supra,* and the collateral determination of what constitutes a "community" for purposes of giving territorial effect to such decision.

"Last Tango In Paris" is not in evidence in this matter. It has not been viewed and no opinion as to its artistic merit or lack of it or its "redeeming social value" or lack of it is herein expressed. This opinion is limited to the single proposition that where a determination of obscenity or lack of it within a Judicial District has been made, it establishes the "community standards" and is binding throughout such District.

The manner in which this Court has reached the above conclusion requires a detailed analysis of the regulation of obscenity in terms of a "community standard".

The concept of "contemporary community standards" was first articulated by Judge Learned Hand in *United States v. Kennerley,* 209 F. 119 (S.D.N.Y.1913). Expressing his dissatisfaction with the then prevailing "most susceptible person" test of *Regina v. Hicklin,* L.R. 3Q B (1868), Judge Hand wrote:

> Yet, if the time is not yet when men think innocent all that which is honestly germane to a pure subject, however little it may mince its words, still I scarcely think that they would forbid all which might corrupt the most corruptible, or that society is prepared to accept for its own limitations those which may perhaps be necessary to the weakest of its members. If there be no abstract definition, such as I have suggested, should not the word "obscene" be allowed to indicate the present critical point in the compromise between candor and shame at which the community may have arrived here and now? If letters must, like other kinds of conduct, be subject to the social sense of what is right, it would seem that a jury should in each case establish the standard much as they do in cases of negligence. *To put thought in leash to the average conscience of the time is perhaps tolerable, but to fetter it by the necessities of the lowest and least capable seems a fatal policy.* (emphasis added)

Nor it is an objection, I think, that such an interpretation gives to the words of the statute a varying meaning from time to time.. Such words as these do not embalm the precise morals of an age or place; while they presuppose that some things will always be shocking to the public taste, the vague subject-matter is left to the gradual development of general notions about what is decent.

The Supreme Court adopted the *Kennerley* community standards rationale without elaboration as part of the fundamental obscenity test in *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.[1] Regrettably, *Roth* did not define the extent of the community. There has been widespread disagreement concerning its geographical scope.[2]

*Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, and related cases[3] sought to correct the limitations of *Roth* first by vesting greater and essentially unreviewable discretion in the trier of fact to define the community against whose standard the prurient interest and patent offensiveness of a work is to be measured, *Miller, supra* at 31–34, 93 S.Ct. 2607; Second, by holding that only descriptions or depictions of sexual conduct specifically defined by state or federal law could be subject to a finding of obscenity (*Id.* at 24–27, 93 S.Ct. 2607); and finally by discarding the "utterly without redeeming social value" test adopted by the plurality opinion in *Memoirs v. Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). *Miller* limited the

---

1. The inquiry is to be:
"Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest", 354 U.S. at 485, 77 S.Ct. at 1311.

2. Compare the opinion of Justice Brennan writing for himself and Justice Goldberg in *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793: Communities vary, however, in many respects other than their toleration of alleged obscenity, and such variances have never been considered to require or justify a varying standard for application of the Federal Constitution. . . . It is, after all, a national Constitution we are expounding", supra at 193–195, 84 S.Ct. at 1681, with that of Chief Justice Warren writing for himself and Justice Clark: "It is my belief that when the Court said in *Roth* that obscenity is to be defined by refer-

ence to 'community standards,' it meant community standards—not a national standard, as is sometimes argued, I believe that there is no provable 'national standard,' and perhaps there should be none. At all events, this Court has not been able to enunciate one, and it would be unreasonable to expect local courts to divine one.", *supra* at 200–201, 84 S.Ct. at 1685.

3. *Miller v. Calif.,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatre v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Kaplan v. Cal.,* 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); *United States v. 12 200-Ft. Reels of Super 8 mm. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); These cases will be collectively referred to as *Miller.*

First Amendment privilege to works which, taken as a whole, have serious literary, artistic, political or scientific value, *Miller, supra,* 413 U.S. at 24, 93 S.Ct. 2607.

*Miller* ended any speculation, at least in state obscenity cases, that the community standard is to be determined with reference to a national community. Quoting with approval from Chief Justice Warren's dissent in *Jacobellis,* the majority explained:

Nothing in the First Amendment requires that a jury must consider hypothetical and unascertainable 'national standards' when attempting to determine whether certain materials are obscene as a matter of fact. . . .

It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City. (citations omitted). . . . People in different States vary in their tastes and attitudes, and this diversity is not to be strangled by the absolutism of imposed uniformity. *Miller, supra,* 413 U.S. at 31–32, 93 S.Ct. at 2619.

The Court did not, however, prescribe which of the alternative communities is to be the basis for the trier of fact's decision. The language of the opinion supports selection of either a statewide or narrower, local community.

One year later, in *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), and *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), the Supreme Court once again addressed itself to the problem. *Jenkins* held that a state court trier of fact may, but is not required to, apply the standards of a hypothetical statewide community in lieu of the nationwide standards rejected by *Miller.*

*Hamling* disposed of any assertion that *Miller* reached only state court cases, *supra* at 104, 94 S.Ct. 2887. Applying the reasoning of *Jenkins,* the Court reaffirmed that a trier of fact:

. . . is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law. (*Id.* at 104–105, 94 S.Ct. at 2901)

The Court found no merit in the claim that federal legislation requires a nationwide standard of enforcement, and observed no constitutional infirmity in subjecting federal defendants to the same variances in criminal liability suffered by state defendants.

The opinion defined the community for federal obscenity prosecutions as the area from which the jurors are drawn, i. e., the federal judicial district in which the case is tried.[4]

In the absence of adoption of the *Hamling* standard, the distributor of sexually explicit material faces an impossible task. Absent a determination of obscenity vel non by the Supreme Court of Ohio, by the Court of Appeals for the district encompassing his county, or by the county Court of Common Pleas, each Ohio county or city prosecutor is free to prosecute or restrain the display of any sexual material which arguably violates a statute or ordinance. Add to this the possibility that the material may be challenged for a violation of a federal statute in either division of each of the two federal districts.

Moreover, since 18 U.S.C. § 3237(a) (1970) permits federal obscenity prosecutions to be brought in any federal judicial district through which allegedly obscene material

---

4. "The result of the Miller cases therefore as a matter of constitutional law and federal statutory construction, is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion 'the average person, applying contemporary community standards' would reach in a given case. Since this case was tried in the Southern District of California, and presumably jurors from throughout that judicial district were available to serve on the panel which tried petitioners, it would be the standards of that 'community' upon which the jurors would draw." 418 U.S. 105, 94 S.Ct. 2901.

passes in transit, as well as where it is produced or distributed, prosecutorial forum shopping could conceivably result in the finder of fact passing upon the legality of material which is not even available in its community.[5]

This nightmare of possible prosecutions affects not only the pornographer whose obscenity lacks First Amendment protection, it affects also the legitimate artist, author, painter, sculptor, producer and distributor whose creative effort in the first instance does possess such protection.

The mere threat of prosecution in but a fraction of the available jurisdictions can serve to censor with such effectiveness that no person, however secure in his belief of nonobscenity and however well financed, will dare to risk prosecution. The prospect of such an endless judicial parade with threat of fine and imprisonment awaiting at each way station must invoke the classic "chilling effect" warning articulated in *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965):

> . . . The chilling effect upon the exercise of First Amendment rights may derive *from the fact of prosecution,* unaffected by the prospects of success or failure. *See NAACP v. Button, supra* [371 U.S. 415] at 432–433 [83 S.Ct. 328, at 337–338, 9 L.Ed.2d 405]; *cf. Baggett v. Bullitt, supra,* 377 U.S. [360] at 378–379 [84 S.Ct. 1316, 1326, 12 L.Ed.2d 377]; *Bush v. Orleans School Board,* 194 F.Supp. 182, 185, *affirmed sub nom. Tungwell v. Bush,* 367 U.S. 907 [81 S.Ct. 1926, 6 L.Ed.2d 1250]; *Gremillion v. United States,* 368 U.S. 11 [82 S.Ct. 119, 7 L.Ed.2d 75]. (emphasis added)

■ Faced with such a result, this Court can only conclude that a previous determination within this district of nonobscenity as a matter of law must be deemed controlling and remove from all other jurisdictions within such district the right to relitigate the question.

## III

### CONCLUSIONS OF LAW

A. This Court has jurisdiction in accordance with 28 U.S.C. § 2201.

B. Where, as here, a motion picture has been held not obscene as a matter of law, such determination is binding throughout the Judicial District in which such holding has been made.

■ C. An effort thereafter by state officials to prosecute exhibitors or distributors under local ordinances within such district is a prosecution undertaken in bad faith and subject to injunction under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669.

D. Defendants and each of them and their successors in office should be and are hereby permanently enjoined from interfering with the transit, distribution, or exhibition of motion picture film known as "Last Tango In Paris". Such defendants are hereby ordered to return to plaintiff all copies of such film retained by them.

E. The Court finding no violation of 42 U.S.C. § 1983 awards no attorney fees to plaintiff. Each party shall pay its own costs.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.

---

**5.** It had been an original intent of this opinion to determine numerically the number of jurisdictions in this nation that could assert "community" in attacking sexually explicit material. When the number of villages, cities, counties, states, federal districts, and "passage through" situations are added together, the number becomes undeterminable. It can only, however, number in the thousands.