823 P.2d 342

CITY OF FARMINGTON, Plaintiff–Appellant,

v.

Gerald STANSBURY, Defendant–Appellee.

No. 12927.

Court of Appeals of New Mexico.

Nov. 13, 1991.

OPINION

BLACK, Judge.

Prior to the initiation of this action, the City of Farmington (City) prosecuted defendant under Farmington Municipal Code, Section 21–50.1 (the Ordinance), for distributing two videotapes, "X-Dreams" and "Horny Housewives." The matter went to trial before a jury. The jury in that case returned a general verdict of not guilty.

The City then brought the present charges against defendant for distributing two other videotapes, "Sex Games" and "Cat Alley." The Farmington municipal court found defendant guilty, and he appealed to the district court. Defendant then moved the district court for an order dismissing the charges, arguing that the prior acquittal collaterally estopped the City from prosecuting him further. The district court granted defendant's motion and ordered the case dismissed.

The City argues that the district court erred in applying the doctrine of collateral estoppel to this matter. While we are mindful of the potential misuse of serial prosecutions, based on the facts before us we must agree with the City and reverse.

In a memorandum opinion to the parties, the district court gave two reasons for granting the motion. First, the court determined that, as a matter of fact, all four movies were essentially the same, saying "the plots in these movies are shallow at best. The purpose of the movies is to depict various sexual interludes with the plot as a flimsy vehicle for the assignations to take place." The district court noted that if the first trial resolved the issue of obscenity against the City on the first two videos, and the second two movies depicted similar sex acts, then collateral estoppel would prevent subsequent prosecutions of similar material.

Second, the district court expressed concern that defendant had available for rental 800 of these types of videos at his place of business. Based on the fact that each of the two prosecutions was based on only two movies, the district court surmised that the City could be expected to bring another

Jay B. Burnham, Deputy City Atty., Farmington, James P. Mueller, Children's Legal Foundation, Phoenix, Ariz., for plaintiff-appellant.

Thomas J. Hynes, Hynes, Hale & Thrower, Farmington, for defendant-appellee.

398 prosecutions against defendant. "Two by Two," said the district court, "is an appropriate way to load an Ark, but a terrible way to bring things to the Courthouse." The court therefore concluded that judicial economy also mandated application of collateral estoppel principles.

The parties do not dispute that these movies had different titles, actors, directors, "plots," etc. The City relies on these differences to support the argument for reversal. Defendant's basic argument is that the trial court is correct because, though the movies are different in their particulars, the numerous sex acts are essentially the same in each movie. We believe defendant's argument is premised upon a fundamental misunderstanding of how the doctrine of collateral estoppel applies to obscenity prosecutions.

■ The doctrine of collateral estoppel prevents an issue of ultimate fact, once determined by a valid final judgment, from being litigated between the same parties or their privities in any future lawsuit. *Buhler v. Marrujo*, 86 N.M. 399, 524 P.2d 1015 (Ct.App.1974). In criminal prosecutions the principle of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. *State v. Nagel*, 87 N.M. 434, 535 P.2d 641 (Ct.App.1975). Double jeopardy thus comes into play when an ultimate fact has been determined at a previous trial. *State v. Orosco*, 99 N.M. 180, 655 P.2d 1024 (Ct.App.1982). Obviously, the Constitution only requires the application of collateral estoppel when there has been an acquittal on the issues actually raised in the first trial. *State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975).

■ The doctrine of collateral estoppel undoubtedly applies in criminal obscenity prosecutions. *Suki, Inc. v. Superior Court*, 60 Cal.App.3d 616, 131 Cal.Rptr. 615 (1976); *People v. Chang*, 86 Misc.2d 272, 382 N.Y.S.2d 611 (1976). However, the doctrine must be very carefully tailored because of the nature of the test for obscenity. In *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614–15, 37 L.Ed.2d 419 (1973), the Court set forth the basic guidelines for determining whether a work

is obscene: (1) whether the average person, applying contemporary community standards, would find the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes sexual conduct specifically defined by applicable state law in a patently offensive way; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. While it was not included in the record, it would appear the City Ordinance tracks the *Miller* test and enumerates several specific acts which might be considered "patently offensive" under the second prong of *Miller*. The *Miller* standard, then, requires the literary, artistic, political, and/or scientific value of each work to be judged in light of the community standards where the work is alleged to be obscene.

■ The first prong of the *Miller* test requires average people in each community to apply contemporary standards at the place and time defendant is charged. The fact that another person has been acquitted on obscenity charges for exhibiting the work in another community does not collaterally estop the state from subsequently prosecuting a different defendant for exhibiting the same work in a different community. *Woodford v. Municipal Court*, 37 Cal.App.3d 874, 112 Cal.Rptr. 773 (1974); *cf. Cinema Assocs. v. City of Oakwood*, 417 F.Supp. 146 (S.D.Ohio 1976) (recent determination by federal court that film was not obscene estopped prosecution of same film by local officials within geographical boundaries of that federal district).

■ The *Miller* test also recognizes community standards may vary, not only geographically, but over time. In *McKinney v. Alabama*, 424 U.S. 669, 96 S.Ct. 1189, 47 L.Ed.2d 387 (1976), the Court recognized that an equity judge's declaration that a work was obscene could not later be used to estop a defendant from presenting that same work to the jury in defendant's criminal trial, so that the jury could apply their interpretation of then-prevailing community standards to determine its obscenity vel non. In his concurrence, Justice Brennan pointed out that community standards may

change over time. 424 U.S. at 689–90, 96 S.Ct. at 1200–01.

■ The second prong of the *Miller* test requires an examination of whether the work violates the specific ordinance under which charges are filed. It has thus been held the fact that defendant has been convicted of violating a *municipal* obscenity ordinance does not collaterally estop the state from filing charges under a state statute based on performance of the same play on a different occasion. *State v. Ell–Gee, Inc.*, 255 So.2d 542 (Fla.Dist.Ct.App. 1971). It has also been stated a finding that magazines were not obscene under a state statute would not collaterally estop the federal government from a prosecution under a federal statute. *United States v. Luros*, 243 F.Supp. 160 (N.D.Iowa), *cert. denied*, 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965). *But see Cinema Assocs.*, 417 F.Supp. at 148.

■ Finally, and most pertinent herein, each work has to be individually evaluated to determine whether, taken as a whole, it lacks serious literary, artistic, political, or scientific value. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Various Articles of Merchandise*, 600 F.Supp. 1383 (N.D.Ill.1985); *KMA, Inc. v. City of Newport News*, 228 Va. 365, 323 S.E.2d 78 (Va.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985). Logic therefore requires that collateral estoppel may not be used to transfer the finding of obscenity for one work to an entirely different work, merely because both depict the same general categories of sexual activities. Even before the Supreme Court set forth the present obscenity test in *Miller*, it had been judicially recognized that collateral estoppel does not prohibit the prosecution of the same defendants for distribution of similar materials.

In *United States v. Frew*, 187 F.Supp. 500 (E.D.Mich.1960), defendants were indicted for knowingly using the mails to distribute obscene materials. Defendants argued that the United States Post Office had previously issued an administrative order prohibiting distribution of some of the same materials, but defendants had obtained an injunction from the federal district court at Los Angeles restraining the enforcement of the post office order. *Id.* at 503–05. Based on the injunction, defendants argued collateral estoppel prohibited the subsequent prosecution in federal court in Michigan. *Id.* at 503. The *Frew* court determined that defendants had the burden of proving the materials found not to be obscene in the earlier case were the same materials challenged in the subsequent proceedings. *Id.* at 505. The court refused to assume the materials were identical and refused to apply the doctrine of collateral estoppel. *Id.*

The court found the related doctrine of *res judicata* did not require dismissal of a criminal obscenity indictment in *People v. Cohen*, 22 Misc.2d 722, 205 N.Y.S.2d 481 (1960), *rev'd on other grounds*, 22 A.D.2d 932, 255 N.Y.S.2d 813 (1964) (per curiam) (mem.) (holding 1958 edition of *Sunshine and Health* not obscene, as a matter of law). In *Cohen* the court recognized the United States Supreme Court had previously reversed a lower court decision that the 1955 edition of the same magazine, *Sunshine and Health*, was obscene. *Sunshine Book Co. v. Summerfield*, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352 (1958). In considering the 1958 edition of *Sunshine and Health*, the *Cohen* court explained why different decisions on the obscenity of facially similar publications could be upheld:

The two issues must be regarded as separate publications each to be judged on its own specific contents. The decision in the Summerfield case cannot give the publication in question immunity for all time, a sort of carte blanche for all future issues.

....

The pictures and other material in both magazines are not the same in contents, description and effect. The February, 1955 issue, which was before the Supreme Court in the Summerfield case, consists of only 32 pages including the covers, and contains 17 pictures of nude persons, while the one before this Court

consists of 64 pages in addition to the covers, and contains 85 such pictures. In the 1955 issue there were no color pictures; whereas in the 1958 issue there are 10 full-page pictures of nude persons in color. In addition, a number of pictures in the 1958 annual issue appear to be deliberately posed for the obvious purpose of arousing sexual interest. There are more pictures and more close-ups of stark nudity showing male, female and adolescent genitalia in the 1958 issue, and the pictures in it are much sharper in focus than the pictures in the February, 1955 issue. Moreover, most of the pictures in the issue of the magazine before this Court tend to invite particular attention to the sexual organs and pubic hair of the persons depicted; which include men, women and children pictured together and alone, on various pages thereof. The publication in question is permeated with pictures which tend to incite passion and sexual urge and are of such nature and composition that the average person, applying contemporary community standards, could find the dominant theme of the material taken as a whole to appeal to prurient interest.

205 N.Y.S.2d at 487–88.

■ The obscenity of each work must therefore be judged individually. Defendant has cited no legal authority, and we have found none, which supports his argument that a prior holding a similar work was not obscene would collaterally estop the criminal prosecution of a different work. Indeed, both *Frew* and *Cohen* held to the contrary. Accordingly, we hold that collateral estoppel cannot apply to the facts of this case.

We are, however, not indifferent to the trial court's concerns that, since defendant has 800 videotapes, the City may use the obscenity ordinance to harass defendant through serial prosecutions. Though the City attorney unquestionably has some discretion in choosing which acts merit prosecution, the courts have provided various remedies for the vexatious use of obscenity ordinances. *See, e.g., Krahm v. Graham,* 461 F.2d 703 (9th Cir.1972) (finding of bad faith enforcement of obscenity law and granting of injunction against further prosecution of 90 pending cases where the 11 cases already tried had resulted in acquittals); *Black Jack Distributors, Inc. v. Beame,* 433 F.Supp. 1297 (S.D.N.Y.1977) (injunction granted against harassment through bad faith enforcement of obscenity laws). *But see Collins v. County of Kendall,* 807 F.2d 95 (7th Cir.1986) (instituting 30 criminal prosecutions over two years did not per se constitute bad faith or harassment). If and when there is evidence that the City is misusing the judicial process to harass defendant, we assume defendant will pursue the appropriate remedy.

IT IS SO ORDERED.

ALARID, C.J., and FLORES, J., concur.