For opinion of O'NIELL, J., dissenting from the ruling in Ford v. Hamilton, No. 22833, see 84 South. 642.

———

(84 South. 643)

No. 23877.

STATE v. ROSE.

(March 1, 1920.   Rehearing Denied May 3, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Indictment and information ⬤⟳110(11)—Indictment in statutory language held sufficient to charge keeping "disorderly house."**

An indictment, charging that defendant did keep a house of public entertainment in which he did then and there permit lewd dancing, contrary to statute, is sufficient, being in the language of Act No. 199 of 1912, defining a "disorderly house" as any house of public entertainment conducted in such manner as to disturb the peace, also any place in which lewd dancing is permitted, despite defendant's contention that the adjective clause in the statute "in which lewd dancing is permitted" is descriptive of a place in which lewd dancing is the custom, and that it was necessary to charge that defendant kept a house of public entertainment in which lewd dancing was permitted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disorderly House.]

2. **Indictment and information ⬤⟳63—Indictment averring keeping of place where lewd dancing was permitted, need not state legal conclusion that place was disorderly.**

An indictment asserting that defendant kept a place where lewd dancing was permitted, is

sufficient under Act No. 199 of 1912 to state the offense of keeping a disorderly house without the legal conclusion that the place was a disorderly house; the statute defining a disorderly house as a place where such dancing is permitted.

3. **Disorderly house ⬤⟳4—Under act declaring place where lewd dancing was permitted disorderly house, dancing need not be customary.**

Under Act No. 199 of 1912, defining a disorderly house among other things as a place where lewd dancing was permitted, one who permits lewd dancing cannot defend on the ground that it was not habitual.

4. **Indictment and information ⬤⟳87(6)—Indictment for continuing offense may specify one day.**

An indictment for an offense that in its nature is a continuing one may validly charge that the offense was committed on one specified day, unless the offense be such that according to the statute it could not be committed on a single day.

5. **Criminal law ⬤⟳254—Trial judge in misdemeanor cases acts as judge and jury.**

In a prosecution for misdemeanor, the trial judge performs the function of both judge and jury, and, like a jury in a prosecution for felony, is the sole and exclusive judge of questions of fact pertaining to the guilt or innocence of the party accused.

6. **Criminal law ⬤⟳254, 260(1)—In misdemeanor case, party desiring may submit declarations of law to trial judge and erroneous ruling is reviewable.**

In a prosecution for misdemeanor, a defendant may submit to a judge legal propositions under Act No. 93 of 1916, and demand rulings thereon in the manner of asking for a special charge to the jury, and if the judge in such case errs in his ruling, the error may be corrected on appeal, provided the bill of exceptions presents a distinct question of law, and does not require decision of any question of fact pertaining to defendant's guilt or innocence.

7. **Criminal law ⬤⟳13—Statute denouncing as disorderly place where "lewd" dancing is permitted, is sufficient without further definition.**

Act No. 199 of 1912, defining disorderly house and declaring that a place where lewd dancing is permitted is a disorderly house, is sufficient without further definition of "lewd,"

which in view of the word "dancing" must be deemed as synonymous with indecent, lascivious, or lecherous.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lewd.]

**8. Constitutional law ⊕≈70(3)—That statute declaring disorderly house place where lewd dancing is permitted might include most fashionable places is no ground for invalidity.**

That by strained construction or the like Act No. 199 of 1912, defining as disorderly a place where lewd dancing was permitted, might include the most fashionable of dancing resorts, depending on the trial judge's idea of graceful movement, wearing apparel, or lack of apparel, is no ground for declaring the statute invalid; such argument being against the wisdom and propriety of the law.

**9. Criminal law ⊕≈254—If defendant desired determination whether lewd dancing in private constituted disorderly house, he should ask for rulings thereon.**

Where defendant, charged with misdemeanor in keeping a disorderly house in violation of Act No. 199 of 1912, by permitting lewd dancing, desired determination whether lewd dancing in private was a violation of the law, he must request the trial judge for rulings on such proposition in the manner provided by Act No. 93 of 1916.

**10. Disorderly house ⊕≈5—Where lewd dancing was done without knowledge of defendant who operated the place, he is not liable.**

In a prosecution under Act No. 199 of 1912, for maintaining a disorderly house, where lewd dancing was permitted, defendant is not liable if he did not know of the lewd dancing, or if it occurred despite his effort to prevent it.

Appeal from Criminal District Court, Parish of Orleans; Arthur Landry, Judge.

Lew Rose was convicted of maintaining a disorderly house, and he appeals. Affirmed.

E. Howard McCaleb and Arthur B. Leopold, both of New Orleans, for appellant.

A. V. Coco, Atty. Gen., and Chandler C. Luzenberg, Dist. Atty., and B. J. Daly and Eugene Stanley, Asst. Dist. Attys., all of New Orleans (T. Simmes Walmsley, Asst. Atty. Gen., of counsel), for the State.

O'NIELL, J. The defendant appeals from a conviction, and a sentence of fine and imprisonment, on an indictment charging:

"That one Lew Rose, late of the parish of Orleans on the 8th day of October, 1919, in the parish of Orleans aforesaid, * * ·* did then and there unlawfully keep a house of public entertainment at the municipal number 318 Dauphine street, in the city of New Orleans, in which he did then and there permit lewd dancing, he, the said Lew Rose, being then and there the manager of the said house of public entertainment, which said house of entertainment is commonly known as the Dauphine Theatre; contrary to the form of the statute," etc.

The statute which the defendant was accused and convicted of violating is the Act No. 199 of 1912, viz.:

"An act to define a disorderly house; making it a misdemeanor to operate houses of that character; fixing the penalty therefor and repealing all laws and parts of laws in conflict therewith.

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that a disorderly house is hereby defined as any house of public entertainment, or a public resort, or open to the public, conducted in such a manner as to disturb the public peace and quiet of the neighborhood, also any place in which lewd dancing·is permitted, or in which lewd pictures are accessible to view, or any house used for purposes of prostitution or assignation, outside the limits fixed by municipal ordinance for houses of that, character; provided that the use of any room, or any part of a building for any of the purposes, or in any of the ways hereinabove enumerated, shall constitute such room or such part a disorderly house.

"Sec. 2. Be it further enacted, etc., that any person who shall keep a disorderly house as defined in section 1 shall be fined in a sum not less than, ten dollars nor more than five hundred dollars and be imprisoned not less than thirty days nor more than sixty days, provided that in the parish of Orleans the district attorney shall not collect any fee for conviction under the provisions of this act. All laws and parts of laws in conflict herewith are hereby repealed.

Defendant filed a motion to quash the indictment, based upon the following propo-

sitions, which were repeated in an objection to the introduction of evidence, and again in a motion in arrest of judgment, to the overruling of which motions and objections, bills of exception were taken, viz.:

(1) That the indictment charges no crime, in that the statute (Act 199 of 1912) contemplates in terms and intention an offense continuing in its nature, whilst the indictment charges the commission of a single, separate act, noncontinuous in its nature, and alleged to have been done on a single day.

(2) That the statute and the indictment are both void, because they do not set forth the nature and cause of the accusation, and are otherwise violative of the articles of the Constitution specified in the motion in arrest, in that the alleged misdemeanor of the keeper or manager of a house of public entertainment or of any place in which he permits so-called lewd dancing on a single day or occasion is neither defined nor set out sufficiently to meet the constitutional inhibition or the substantial requirements of criminal law and pleading in defining or charging an offense.

(3) That the indictment is invalid because it is not therein averred that the so-called single, isolated act of lewd dancing was performed in the presence of anybody, or that the public or any person was offended thereby.

(4) That the indictment is bad because it fails to charge a scienter, or guilty knowledge on the part of defendant.

[1, 2] The first objection urged to the indictment, stated briefly, is that it charges only a single instance of permitting lewd dancing; whereas the statute, defendant contends, denounces only a continuous or continuing or habitual permitting of lewd dancing.

The first objection is founded upon the idea that, in the statutory definition of a disorderly house, "any place in which lewd dancing is permitted," the adjective clause, "in which lewd dancing is permitted," is descriptive of a place in which lewd dancing is the custom. Hence it is argued that to charge that the defendant did, on a specified day, keep a house of public entertainment in which he did then and there permit lewd dancing, is not the same as to charge that he did, on the date specified, keep a place in which lewd dancing was permitted. The argument is not without reason; but our opinion is that it deals too much with the niceties of grammatical expression and refinement of speech. The accusation, that the defendant kept a place in which he permitted lewd dancing is, in plain language, an accusation that he kept a place in which lewd dancing was permitted. And that is the language of the statute. The offense denounced by section 2 of the statute is the keeping of a disorderly house, as defined in section 1. But, as there are several kinds of disorderly houses defined in section 1 of the law, it was necessary to specify in the indictment the kind of disorderly house that the defendant was accused of having kept, even though the indictment had charged, in the terms of the statute, that the defendant did then and there, on the date and at the place specified, keep a disorderly house. It was not necessary to state, in the indictment, the legal conclusion that the place in which lewd dancing was permitted was a disorderly house, because the statute itself declares that a place in which lewd dancing is permitted is a disorderly house, and that any person who shall keep a disorderly house, as thus defined, shall be deemed guilty.

[3] To hold that the indictment should contain the allegation that the permitting of lewd dancing in the place kept by the defendant was continuous, or continuing, or customary, would be to rewrite the law—to perform a legislative, not judicial, function. Both elements of the offense, the keeping of the house and the permitting of lewd dancing therein, are, in a sense, and in their nature,

continuing acts. To hold that, in such case, the officers of the law should not step in and interfere until lewd dancing has become the custom or fashion in the house would be an unreasonable interpretation of the law. The statute imposes upon the keeper of any house the obligation not to permit lewd dancing in the place. As that obligation is itself a continuing duty on the part of the keeper of any house, it would be anomalous to hold that he does not violate the duty or the law until his disobedience has become a custom or habit.

[4] According to Bishop's Directions and Forms (2d Ed.) par. 81, an indictment for an offense that is in its nature a continuing offense may validly charge that the offense was committed on one specified day, unless the offense be such that, according to the statute, it could not be committed on a single day. In other words, if the statute in this case declared it unlawful for the keeper of any house to permit lewd dancing therein during two or more days, it would be essential to a valid indictment to charge that the lewd dancing was permitted during two or more days. Or, in a proceeding, such as is authorized by Act No. 47 of 1918, p. 67, to abate a nuisance, it would be necessary for the complainant to allege a continuing offense. But in a criminal prosecution for a statutory offense it is sufficient for the indictment to follow the language of the statute, or be couched in language of the same import. If, then, the defendant would rather be more specifically "informed of the nature and cause of the accusation against him" before pleading to the bill of information or indictment, he may demand a bill of particulars.

[5, 6] It is argued in the brief of counsel for appellant that, if it should be held that the offense could be committed on a single day, the manager of the Dauphine Theatre, or the keeper of any place, for that matter, might be convicted and condemned upon proof merely that a dancer made only one wicked or indiscreet movement. The argument ignores the fact that lewd dancing is not the offense itself, nor is it absolute proof of the offense, on the part of the keeper of the place, of permitting lewd dancing. This court has no jurisdiction of questions of fact, or sufficiency of the evidence, pertaining to the guilt or innocence of the party accused, in a criminal prosecution. In a prosecution for a misdemeanor, the trial judge performs the functions of both judge and jury, and he is therefore, like the jury in a prosecution for a felony, the sole and exclusive judge of questions of fact, and of sufficiency of the evidence, pertaining to the guilt or innocence of the party accused. If the facts established on the trial in such case are such that the statute invoked by the state may not be applicable, the defendant has a remedy for correcting an erroneous ruling of the trial judge. Under Act 93 of 1916, p. 211, the defendant, in a criminal trial before a judge without a jury, may submit to the judge any legal proposition and demand a ruling thereon, in the manner of asking for a special charge to a jury; and, if the judge in such case errs in his ruling upon the application of the law to the facts established by the evidence, the error may be corrected on appeal to this court, provided the bill of exception presents a distinct question of law and does not require a decision of any question of fact pertaining to the guilt or innocence of the party accused. As no such request was made, or bill of exceptions reserved, in this case, we must assume that the law was applicable to the facts proven on the trial.

[7] Appellant's second contention is that the statute itself, as well as the indictment, is invalid, because it does not describe or define the kind of lewd dancing that the law undertakes to prohibit, or that goes to make a house where such dancing is permitted a "disorderly house." This objection refers to the provision in article 10 of the Constitution

that, in all criminal prosecutions, the party accused shall be informed of the nature and cause of the accusation against him; and it refers to the provisions of articles 16, 17, and 96, which, in effect, prohibit the judicial department of the government from exercising any function properly belonging to the legislative department.

Appellant concedes that the word "dancing" is well understood, but he contends that the adjective "lewd" has so many and diverse meanings that it does not definitely describe the kind of dancing that the statute undertakes to denounce as offensive. He reminds us that there is hardly a word in the English language that has only one meaning. It is not in the abstract, however, that we find the exact meaning of a word, but in the context or combination of words. As counsel for appellant says, the word "lewd" has no statutory definition, nor technical meaning. But it has, particularly when applied to dancing, the very well and generally understood and unmistakable meaning, indecent, lascivious, lecherous, tending to excite lustful thoughts. If all of these qualifying terms were contained in the statute, they would amount to nothing but tautology, which is no more desirable in a statute than in a newspaper write-up, or elsewhere.

In the cases cited by counsel for appellant, in which this court pronounced statutes invalid for want of a definition of the offense denounced, the statutes were far more vague and indefinite than is the statute complained of in this case. For example, in State v. Smith, 30 La. Ann. 846, a statute denouncing without defining the crime of "incest" was declared invalid, because the act of May 4, 1805, adopting the common-law definition of certain crimes therein specified, did not include "incest"; and there was no statute of this state declaring within what degree of relationship marriage or cohabitation should be deemed incest. In State v. Gaster, 45 La.

Ann. 636, 12 South. 739, the statute that was declared invalid undertook to punish any public officer found guilty of "any misdemeanor in the execution of his office." In State ex rel. Etic v. Foster, Judge, 112 La. 746, 36 South. 670, the defendant, or relator, was accused of having violated section 908 of the Revised Statutes, denouncing as a crime the "keeping of any disorderly inn, tavern, ale house, tippling house, gaming house or brothel." The ruling was that the indictment was defective, in that it did not inform the defendant of the manner in which his tavern or tippling house was deemed disorderly. There was no ruling on the validity of the statute. The court treated the relator's complaint as if he had asked for and had been denied a bill of particulars. In State v. Comeaux, 131 La. 930, 60 South. 620, the statute that was pronounced invalid undertook to denounce as a crime, without defining, "an indecent assault." There being no legal definition nor general understanding of the term "indecent assault," it was impossible for a judge or jury to know what particular offense would be violative of the statute. In the case of the City of Shreveport v. Wilson et al., 145 La. 906, 83 South. 186, the defendants, who had lived together in concubinage, were prosecuted for violating a municipal ordinance making it "unlawful for any person to use or occupy any house or room for the purpose of prostitution, assignation or other lewd or indecent act." The ruling was that concubinage was not prostitution or assignation, within the ordinary meaning of the words, and that, in so far as the statute undertook to punish for any "other lewd or indecent act," the language was too vague and indefinite to inform a party accused "of the nature and cause of the accusation against him."

The decisions cited supra, therefore, are not to be regarded as a departure from the doctrine, now well settled, that a statute

which defines and denounces certain conduct as a crime is not rendered invalid by investing the trial judge with some discretion in determining whether the facts of a given case shall bring it within the purview of the law. Although it is the function of the jury to determine, from the evidence, what are the facts of a case, it is the function of the trial judge to decide the question of applicability of the law to the facts found by the jury.

In the case of the City of Shreveport v. Fanny Roos, 35 La. Ann. 1011, it was held that a municipal ordinance, denouncing as a criminal offense the keeping of a bawdyhouse in a disorderly and indecent manner was not invalid merely because it did not undertake to specify what particular facts or circumstances should render a bawdyhouse disorderly or indecent, but left it to the discretion of the magistrate to determine whether the circumstances and conditions prevailing in any particular bawdyhouse should be deemed disorderly or indecent.

In a supplemental brief filed by counsel for appellant, our attention is called to the ruling in State v. Jacobs, 145 La. 898, 83 South. 183, that, in indicting a man for the crime of willfully and "without just cause" deserting or neglecting to support his wife or minor children in necessitous or destitute circumstances, it is essential to the validity of the indictment that it shall contain the words "without just cause," or words of their import. The decision was only an announcement of the doctrine that every fact that forms an essential element of the crime intended to be charged must be alleged in the indictment; and it was not inconsistent with the previous ruling in State ex rel. Mioton v. Baker, Judge, 112 La. 802, 36 South. 703, with regard to the same statute (Act No. 34 of 1902, p. 42), that the law was not unconstitutional for want of a definition of the expression "without just cause." It was

there held to be properly within the province of the trial judge to decide whether any particular case of desertion or nonsupport was "without just cause."

[8] It is suggested by counsel for appellant that, inasmuch as the statute declares that any place—not only a place of public entertainment, but any place—where lewd dancing is permitted is "a disorderly house," therefore a strict enforcement of this law might result in the grave consequence of subjecting the proprietors of the most fashionable places of dancing to arrest and prosecution, and that a conviction or acquittal in such case would depend altogether upon the trial judge's idea of graceful movement, wearing apparel, or lack of apparel, of the dancers. Our answer is that the argument is against the wisdom or propriety of the law—a matter that concerns the Legislature, not the courts. It might as well be argued that the familiar statutes against indecent exposure of the person in a public place are invalid, because some overscrupulous or prudish judge might be unreasonable in his condemnation of décolleté costumes, or rainy day skirts. It is too well settled to admit of argument that a statute should not be deemed invalid because a rigid enforcement of it might result in injustice, or even because a case where no wrong was committed might come within a literal interpretation of the law. In State v. Cognovitch, 34 La. Ann. 529, the defendant was prosecuted and convicted for the statutory crime of "assaulting another by willfully shooting at him," under section 792, Revised Statutes, and was convicted. On appeal, he assigned as error that the accusation, according ' both the statute and the indictment, meant no harm, without the words "with a dangerous weapon." Mr. Justice Fenner, for the court, replied that it was sufficient that the indictment was drafted in the language of the statute, and that the common sense of prosecuting officers and

judges and juries could be relied upon to protect persons from imprisonment in the penitentiary for shooting with popguns or other harmless playthings. In State v. Keasley, 50 La. Ann. 761, 23 South. 900, and in State v. Bolden, 107 La. 116, 31 South. 393, 90 Am. St. Rep. 280, and again in State v. Sonier, 107 La. 794, 32 South. 175, Act No. 44 of 1890, p. 37, making it a penitentiary offense to shoot, stab, cut, strike, or thrust a person with a dangerous weapon with intent to kill, was declared valid, notwithstanding the statute did not expressly except an excusable or justifiable shooting, stabbing, etc., or a case of self-defense.

What we have said with regard to appellant's first and second complaint is a sufficient answer to his third and fourth complaint, viz.: (3) That it was not charged that the alleged lewd dancing was done in presence of anybody, or that any one was offended thereby; and (4) that it was not alleged that the defendant had knowledge that lewd dancing was going on in his place of amusement.

[9] If lewd dancing was done in the place privately and not in presence of any one except the dancer or dancers, and if the defendant therefore desired a ruling upon the question whether a house in which unobserved lewd dancing was permitted should be condemned as a "disorderly house," he should have asked for a ruling by the trial judge in the manner provided by Act No. 93 of 1916, p. 211, supra.

[10] If lewd dancing was done in the place without defendant's knowledge and despite his faithful attempt to prevent it, he was not guilty of permitting lewd dancing in the place, and should not have been convicted. 14 Cyc. 488. But we are not aware that that defense was urged, and we have no knowledge of the facts on which the verdict was rendered. The allegation that the defendant permitted lewd dancing in the place meant that he had knowledge of it. The statute required nothing more.

The conviction and sentence appealed from are affirmed.