384 So.2d 409 (1980)
STATE of Louisiana
v.
Vincent F. FRANZONE.
STATE of Louisiana
v.
Michael S. CENTANNI.
Nos. 65492 to 65494 and 65525.
Supreme Court of Louisiana.
May 19, 1980.
*410 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, W. C. Douglas Friederichsen, Asst. Dist. Attys., for plaintiff-appellant in Nos. 65492 to 65494 and for plaintiff-relator in No. 65525.
Samuel W. Ethridge, Kenner, for defendant-appellee in Nos. 65492 to 65494.
Michael Silvers, Silvers & Tanet, New Orleans, for defendant-respondent in No. 65525.
DENNIS, Justice.[*]
In these cases the state appealed from judgments below which quashed criminal prosecutions and declared unconstitutional, as invalid prior restraints of expression, criminal statutes which forbid property owners to knowingly lease or allow use of premises for obscenity. We affirm. Prosecution of property owners for leasing or allowing premises to be used for obscenity, in the absence of procedural safeguards designed to obviate the dangers of a system of prior restraint, tends to operate as an impermissibly broad, permanent prior restraint upon dissemination of publications.
Defendants are owners of buildings located in the City of Kenner which have been *411 leased to bookstore operators. As a result of the leases and the bookstore operations, each defendant was charged with letting premises for obscenity, La.R.S. 14:85.1, and letting a disorderly place for the purpose of obscenity, La.R.S. 14:105. After a hearing on defendant's motions to quash, the district court declared the statutes unconstitutional and quashed the bills of information. The state appealed. La.Const.1974, Art. 5, § 5(D).
The statutes in question seek to punish an owner of property who knowingly leases his premises to anyone who intends to use it for the practice of obscenity, or an owner who knowingly allows the continued use of his premises for obscenity. They provide:
§ 85.1 Letting premises for obscenity
Letting premises for obscenity is the granting of the right of use or the leasing of any premises, knowing that they are to be used for the practice of obscenity as defined in R.S. 14:106Criminal Code Article 106, or allowing the continued use of the premises with such knowledge.
Whoever commits the crime of letting premises for obscenity shall be fined not more than five hundred dollars, or imprisoned for not more than six months or both.
§ 105. Letting a disorderly place
Letting a disorderly place is the granting of the right to use any premises knowing that they are to be used as a disorderly place, or allowing the continued use of the premises with such knowledge.
Whoever commits the crime of letting a disorderly place shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
[Keeping a disorderly place is the intentional maintaining of a place to be used habitually for any illegal purpose. La.R.S. 14:104; See State v. Defrances, 351 So.2d 133 (La.1977)].
As we understand the oral reasons assigned by one of the district judges, he agreed with the defendants' contentions that La.R.S. 14:85.1 (Letting premises for obscenity) is unconstitutional on its face and La.R.S. 14:105 (Letting a disorderly place) is unconstitutional as applied to obscenity, because they constitute an invalid system of prior restraint of expression. We conclude that the district judge was correct.
The chief purpose of the conception of the liberty of the press is to prevent previous restraints upon publication. As Blackstone maintained, "[t]he liberty of the press is indeed essential to the nature of a free state; but this consists of laying no previous restraints on publications, and not in freedom from censure for criminal matter when published." Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1930). Accordingly, the Supreme Court repeatedly has said that "`[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.' Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631 [639] 9 L.Ed.2d 584 (1963); see also Near v. Minnesota, [supra], [283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)]. The government thus carries a heavy burden of showing justification for the imposition of such a restraint. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, [1578], 29 L.Ed.2d 1 (1971)." New York Times Co. v. United States, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822, 824 (1971). We are satisfied that our state constitution's guarantee of these liberties was designed to serve the same purpose and provides at least coextensive protection. La.Const. 1974, Art. 1, § 7.
In passing upon the constitutional questions of whether the statutes in question operate as invalid prior restraints upon expression, this Court has regard to substance and not to mere matters of form, and for that reason, in accordance with familiar principles, the statutes must be tested by their operation and effect. See Near v. Minnesota, 283 U.S. at 708, 51 S.Ct. at 628, 75 L.Ed. at 1364. That operation and effect are clearly seen by the nature and wording of the statutes themselves.
*412 The object of the statutes in prohibiting owners from letting or allowing use of premises for the purpose of obscenity is not merely the punishment of an offending landlord, but the suppression of offensive publications by forcing all property owners to refuse the use of their premises to potential distributors. Extending far beyond the target of the legislation, the statutes operate to discourage the letting of premises for dissemination of any materials which even arguably constitute obscenity and to encourage closing a bookstore if even a small part of its publications is obscene. Since a landlord may be charged without a judicial finding of probable cause that publications sold from his premises are obscene, the effect of the statutes is to force landlords and tenants to consult the local prosecutor with regard to leasing and publications, thus casting that official in the role of censor of these activities. In sum, the operation and effects of the statutes are manifold: the existence of the laws alone will discourage many landlords from letting premises for the sale of publications, obscene and otherwise; regulation of other property owners' leasing policies, and the publications sold by their tenants, will result from de facto censorship by local law enforcement authorities; charges filed against those who fail to consult or heed the officials may compel bookstore closures. The prior restraint upon publication which results from any of these checks is apt to be broad and final, since the statutes do not provide for any procedural safeguards designed to obviate the dangers of a censorship system.
A system of prior restraint of expression is invalid unless (1) there is assurance the government official imposing the restraint will, within a specified brief period, either allow publication or proceed immediately in court to restrain publication; (2) any restraint imposed in advance of a final judicial determination on the merits is similarly limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution; and (3) the procedure assures a prompt final judicial decision to minimize the impact of possibly erroneous governmental action. See Southeastern Promotions Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); Heller v. New York, 413 U.S. 483, 37 L.Ed.2d 745, 93 S.Ct. 2789 (1973); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The statutes at issue in the present cases, are therefore, invalid prior restraint systems because they tend to effectuate large-scale suppression of bookstores and book sales without providing any of the enumerated procedural safeguards. Accordingly, La.R.S. 14:85.1 is unconstitutional on its face and La.R.S. 14:105 is unconstitutional insofar as it applies to letting or allowing premises to be used for obscenity.
Even though a statute may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth or as a prior restraint if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the court. Doran v. Salem Inn Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); Freedman v. Maryland, supra. Accordingly, the property owner defendants in the present case had standing to attack the statutes at issue because of the danger of tolerating, in the area of First Amendment freedoms, the existence of penal statutes susceptible of application as a broad and permanent prior restraint upon the operation of bookstores.
For the reasons assigned the judgments quashing the bills of information are affirmed.
AFFIRMED.
NOTES
[*] The Honorable PAUL B. LANDRY, Jr., participated in this decision as an associate justice pro tempore.