## Richmond

## KMA, Inc.

### v.

## City of Newport News

Record No. 830875.

November 30, 1984.

Present: All the Justices.

*Irvin Borenstein (Frederic L. Moschel; Arthur M. Schwartz (Colo.); Bradley Reich (Colo.),* on brief), for appellant.
*Kris J. Sundberg, Assistant City Attorney (Robert V. Beale, City Attorney; William C. Johnson, Assistant City Attorney,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

KMA, Inc.[1] (KMA), was charged in each of 33 indictments, as amended, with knowingly owning a building and permitting it to be used for the purpose of presenting an obscene performance in

---

[1] The record shows that the corporation was incorporated as K.M.A., Inc. Throughout this litigation, however, it usually has been referred to as KMA, Inc.

violation of Section 27-4(2) of the Newport News City Code.[2] A jury found KMA guilty as charged and fixed its punishment at payment of a fine of $1,000 for each offense. The trial court entered judgment on the verdict.

At a pretrial hearing, KMA moved to dismiss the original indictments on the grounds that they failed to include the element of scienter and that the ordinance creates a system of prior restraint of protected speech in violation of the First Amendment. The trial court overruled the motion but permitted the City to amend the indictments to include the word "knowingly" in the allegation of each indictment. Finally, the court denied KMA's motion to consolidate the 33 charges into one single-count indictment. On appeal, KMA argues that each of these actions of the trial court constituted reversible error.

At trial, most of the relevant facts were stipulated. It was stipulated that the building at 13772 Warwick Boulevard had been owned by KMA since 1978 and that Wall Distributors, Inc., subleased the property under an assignment dated June 4, 1982, from the original lessee, Crusader Enterprises, Inc. The business on the premises had been operated by each tenant under the name "Book Boutique." It was further stipulated that each of the 33 films on which the indictments were based was obscene, that each was on a separate projector at the time of seizure, and that each had been viewed by customers of the tenant.

Evidence established that Donna Gallagher signed the application for a 1982 business license as authorized agent for Crusader Enterprises, Inc. She was listed as president, secretary, treasurer, and one of the two directors of KMA on the 1981 Annual Report of that corporation filed with the State Corporation Commission. The investigating officer of the Newport News Police Department identified Thomas Francis Hughes as an employee of the "Book Boutique" when it was operated by Crusader Enterprises, Inc., and subsequently when it was operated by Wall Distributors, Inc. Hughes was listed as the other director of KMA on the 1981 Annual Report.

---

[2] Section 27-4(2) of the Newport News City Code provides:
It shall be unlawful for any person to knowingly: . . . [o]wn, lease, or manage any theatre, garden, building, structure, room or place and lease, let, lend, or permit such theatre, garden, building, structure, room or place to be used for the purpose of presenting such obscene exhibition or performance.

The record shows that Crusader Enterprises, Inc., had been convicted of violations of the obscenity ordinance and had failed to pay the fines imposed upon it. The sheriff, therefore, had levied upon all personal property of that corporation located at 13772 Warwick Boulevard to satisfy the judgment. By order entered June 8, 1982, the trial court directed the sheriff to remove such personal property from the premises and sell what was not obscene material. It is uncontroverted that the 33 films now in issue were included in the property upon which the sheriff levied. It is also uncontroverted that before the charges were initiated in the present case, there was a finding of probable cause made by a magistrate.

### 1. Scienter.

KMA argues that the indictments were constitutionally deficient for failure to allege scienter. If they were void, of course, they could not be amended.

*Wall Distributors* v. *Newport News*, 228 Va. 358, 323 S.E.2d 75 (1984), this day decided, is controlling. As we there held, although scienter is an essential element of the crime charged under the obscenity ordinance, failure expressly to allege knowledge in the body of the indictments did not render them void. Because the indictments adequately described the offense charged and cited and incorporated by reference the ordinance defining the proscribed conduct, they complied with the requirements of Code § 19.2-220 and Rule 3A:7(a) (renumbered and amended as Rule 3A:6(a), effective July 1, 1984). As the indictments were valid, the amendment adding the word "knowingly" was permissible, albeit unnecessary. The amendment neither changed the nature or character of the offense charged nor resulted in surprise or prejudice to the accused.

### 2. Prior restraint.

KMA argues that the ordinance is facially unconstitutional because it forces property owners to monitor and regulate the contents of materials distributed by their tenants.[3] KMA says that

---

[3] It is irrelevant in the analysis of the issue of prior restraint in violation of the First Amendment that the films were stipulated to be obscene. If a prior restraint exists, its impact extends to any materials whose dissemination is impeded without the required constitutional safeguards. *See Southeastern Promotions, Ltd.* v. *Conrad*, 420 U.S. 546, 559-60 (1975).

the ordinance results in *de facto* censorship by landlords who fear criminal prosecution and therefore refuse to lease their buildings to operators of bookstores and theaters. This argument is without merit. The ordinance merely prohibits a landowner from knowingly leasing his property or permitting it to be used for the purpose of violating a local criminal law.

The First Amendment does not afford protection to those who disseminate obscene materials in violation of the criminal laws. Thus, a legitimate governmental interest in regulating commerce in obscene materials has been validated where the obscenity determinations under the regulatory provisions comply with the constitutional standards enunciated in *Miller v. California*, 413 U.S. 15, 36-37, *reh'g denied*, 414 U.S. 881 (1973), and *Roth v. United States*, 354 U.S. 476, *reh'g denied*, 355 U.S. 852 (1957). *See, e.g., Hamling v. United States*, 418 U.S. 87, *reh'g denied*, 419 U.S. 885 (1974) (statute prohibiting mailing of obscene materials); *Miller, supra* (statute prohibiting mailing of unsolicited obscene materials); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, *reh'g denied*, 414 U.S. 881 (1973) (statute prohibiting distribution of obscene materials); *Kaplan v. California*, 413 U.S. 115, *reh'g denied*, 414 U.S. 883 (1973) (statute prohibiting distribution of obscene materials); *United States v. 12 200-Ft. Reels of Super 8 mm. Film*, 413 U.S. 123 (1973) (statute prohibiting importation of obscene materials for private use); *United States v. Orito*, 413 U.S. 139 (1973) (statute prohibiting transportation of obscene materials in interstate commerce). The Commonwealth of Virginia, in the exercise of its police power, may properly determine that public exhibition of or traffic in obscenity may be contrary to the public interest. *See Paris Adult Theatre*, 413 U.S. at 69. The Commonwealth, acting through the General Assembly, has made such a determination in enacting the state obscenity laws and authorizing local governing bodies to adopt similar local ordinances. Code §§ 18.2-372, *et seq.*

In the enforcement of obscenity laws, a state or locality may seize single copies of films to preserve them for use as evidence, particularly where the seizure does not prevent continued exhibition of the films. *Heller v. New York*, 413 U.S. 483 (1973). In that case, the Supreme Court held:

If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and,

following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible.

*Id.* at 492 (footnote omitted). *Cf. Roaden* v. *Kentucky*, 413 U.S. 496 (1973), where the Supreme Court held that seizure of a film by a police officer "without the authority of a constitutionally sufficient warrant" was a form of unreasonable prior restraint. *Id.* at 504.

KMA does not challenge the City's compliance with the seizure procedures required by *Heller* and *Roaden.* KMA attacks the ordinance, however, as an informal mechanism for prior restraint which fails to provide for prompt judicial resolution of the obscenity issue and a prompt final determination.

KMA cites *Penthouse International, Ltd.* v. *McAuliffe,* 610 F.2d 1353 (5th Cir.), *cert. dismissed,* 447 U.S. 931 (1980), as an example of an informal system of prior restraint that violates the First Amendment. In *Penthouse,* McAuliffe, the Solicitor General of Fulton County, Georgia, pursued a course of conduct designed to rid Atlanta of certain magazines sold at newsstands, food stores, and drug stores. Investigators under his direction arrested vendors without warrants upon the officers' own cursory examinations of the magazines. Statements by McAuliffe printed in local papers indicated he intended to continue to arrest those selling "obscene materials." In response, the region's wholesale distributor of most of the magazines advised all its retailers to remove the magazines from their shelves. Where the magazines were still sold, warrantless arrests of the vendors continued. 610 F.2d at 1357-58.

The appellate court held that the threat of prosecution through a scheme of newspaper announcements, systematic visits to magazine retailers, and warrantless arrests without an independent judicial determination of obscenity constituted a prior restraint. Removal of the magazines from store shelves in light of these threats was not voluntary. *Id.* at 1360. The court also held that the "constructive seizure" caused by McAuliffe's activities failed to meet the *Heller/Roaden* test for constitutionality. *Id.* at 1362.

*Penthouse* is distinguishable from the present case. No "constructive seizure" of materials is effected by enforcement of the Newport News ordinance. The ordinance creates no threat that

landlords will be prosecuted without a prior judicial determination of obscenity. There is nothing in the record to suggest that KMA sought return of the films or an expedited determination of obscenity. There is only the stipulation of obscenity. On the record before us, the availability to KMA of a prompt final determination cannot successfully be challenged.

KMA seeks to have us apply the safeguards against unconstitutional prior restraints required by the Supreme Court in civil proceedings for the absolute suppression of allegedly obscene materials. *See Southeastern Promotions, Ltd.* v. *Conrad*, 420 U.S. 546, 560 (1975). But the Court said in that case:

> The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand.

*Id.* at 558-59.

KMA relies heavily upon *State* v. *Franzone*, 384 So.2d 409 (La. 1980), in arguing that the Newport News ordinance creates an unconstitutional system of prior restraint because it requires landlords, to avoid the risk of criminal prosecution, to censor the materials distributed by their tenants in bookstores and theaters. In *Franzone*, the Louisiana Supreme Court held facially unconstitutional two statutes forbidding an owner from knowingly leasing or allowing use of his property for the practice of obscenity. The reasoning of the court was this:

> Since a landlord may be charged without a judicial finding of probable cause that publications sold from his premises are obscene, the effect of the statutes is to force landlords and tenants to consult the local prosecutor with regard to leasing and publications, thus casting that official in the role of censor of these activities.

*Id.* at 412.

That rationale is not applicable here because KMA was not charged, nor could it have been charged, without a determination of probable cause made by a neutral and detached magistrate.

The fears expressed by the Louisiana court in *Franzone* are unjustified in Virginia. The Newport News ordinance is a criminal law which punishes unlawful conduct after it occurs rather than restraining protected speech before a determination that it is obscene. The ordinance places no affirmative duty on a landlord to determine the nature of materials disseminated by a tenant. It merely imposes a criminal sanction on the landlord who purposefully allows his property to be used for distribution of obscenity or, after becoming aware of such use, continues to permit the illegal activity.

Moreover, the ordinance no more requires an innocent landlord to determine the content of materials distributed on his premises than statutes proscribing knowing sales of obscene materials require an innocent bookseller to ascertain the content of all the materials he sells. In each instance, the applicable test is whether the defendant had knowledge of or reason to know of the character and content of the material. *See Hamling* v. *United States, supra,* 418 U.S. at 123.

We hold that the ordinance is facially constitutional and that it was constitutionally applied in this case under the First Amendment and also under Article I Section 12 of the Virginia Constitution.

### 3. Multiple indictments.

KMA argues that the trial court erred in denying its motion to consolidate the 33 indictments into a single indictment. As amended, each indictment charged that KMA knowingly owned a building and permitted it to be used for the purpose of presenting an obscene motion picture therein described. The same language of each indictment was used in the form of verdict returned by the jury. KMA says that the evidence required to prove each of the 33 charges is the same. If this is correct, there was only one offense and the prosecution for multiple offenses violated the constitutional guarantee against double jeopardy. *See Blockburger* v. *United States,* 284 U.S. 299, 304 (1932).

Section 27-4 of the Newport News Code, dealing with obscene exhibitions and performances, comprises two subsections. Section 27-4(1) makes it unlawful knowingly to "present . . . any obscene exhibition or performance, including the exhibition or performance of any obscene motion picture." Section 27-4(2) makes it unlawful knowingly to "[o]wn . . . any . . . building

. . . and lease . . . or permit such . . . building . . . to be used for the purpose of presenting such obscene exhibition or performance."

 In *Educational Books, Inc.* v. *Commonwealth*, 228 Va. 392, 323 S.E.2d 84 (1984) (this day decided), we held that under the provisions of Code § 18.2-374, prohibiting the sale of "any obscene item," the sale of each one of a number of obscene magazines constituted a separate offense. By the same rationale, under the provisions of Section 27-4(1), prohibiting the presentation of "any obscene exhibition or performance," the presentation of each one of a number of obscene motion pictures would constitute a separate offense. Aside from the legislative intent manifest in the language of the ordinance, the same evidence is not used where there are multiple charges arising from presentations of different obscene motion pictures. The determination of obscenity must be made on the basis of each film.

 In the present case, each indictment required proof that KMA (1) knowingly (2) owned the building and (3) permitted its use (4) for the purpose of presenting an obscene motion picture therein described. Section 27-4(2) makes it unlawful for a person knowingly to own a building and permit it to be used for the purpose of presenting "such obscene exhibition or performance." It is apparent that "such obscene exhibition or performance" refers to the "exhibition or performance of any obscene motion picture" proscribed by Section 27-4(1). Under Section 27-4(1), each exhibition or performance forms the basis of a separate unlawful act. The language of Section 27-4(2), in conformity with that of Section 27-4(1), has the same effect. Each offense charged was knowingly owning a building and permitting its use for presentation of one obscene film, not for presentation of obscene films. The ordinance is directed at each obscene exhibition, rather than at obscene exhibitions collectively.

 Because the wording of the ordinance discloses the legislative intent that each obscene motion picture shall constitute the basis for a separate offense, and because the evidence, *i.e.*, the film, was different in each case, we hold that the trial court did not err in denying KMA's motion to consolidate the indictments. Holding as we do that there were 33 separate offenses, it follows that we hold that punishment was properly imposed for each offense. No fine exceeded the maximum amount permitted by law.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*